# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **KAREN B MCGEE,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **No. 1:23-CV-00820-DII** |
| | § | |
| **CITY OF AUSTIN,  TRAVIS** | § | |
| **COUNTY,  OFFICER DOE 1,** | § | |
| *Defendants* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE UNITED STATES DISTRICT JUDGE

Before the Court are the City of Austin's Motion to Dismiss, Dkt. 9; Travis County's Motion to Dismiss, Dkt. 10; and all related briefing. After reviewing these filings and the relevant case law, the undersigned recommends that the motions be denied.

## I.      BACKGROUND

Plaintiff Karen McGee brings this civil rights action based on her arrest by Austin police at the Austin-Bergstrom International Airport ("ABIA") and detainment at a Travis County jail. Dkt. 6, at 1-2. McGee, who has severe hearing loss, relies on a combination of hearing aids and lip reading. *Id.* at 3-4. She does not use American Sign Language. *Id.* at 4. On September 13, 2022, McGee arrived at ABIA from Atlanta and awaited a connecting flight to Seattle. *Id.* While sitting at the departure gate she turned off her hearing aids from her cell phone using a mobile application. *Id.* As her departure time approached and no boarding line formed,

McGee turned her hearing aids back on and approached the gate agents who explained that there'd been an announcement about a gate change, and she'd missed her flight. *Id.* at 5.

The gate agents issued a ticket for a later flight on another airline. *Id.* While awaiting her new flight, she learned that there was a boarded flight headed to Seattle that had not yet left the airport. *Id.* McGee approached the gate agents to ask whether she could switch to the earlier flight. *Id.* She spoke in a loud voice because of incorrect settings on her hearing aids. *Id.* In response to McGee's inquiry, three successive gate agents shook their heads "no" or did not respond to her. *Id.* McGee states that these gate agents did not write down a response or look at her directly, so she was unable to fully understand their responses. *Id.*

While she stood at the gate agents' desk, Transportation Security Administration ("TSA") officers approached her, spoke with her for a few minutes, and continued on their rounds. *Id.* Later, officers from the Austin Police Department ("APD") arrived responding to a call concerning a 70-year-old woman with severe hearing loss who was reportedly confused and frustrated and who the gate agents claimed was drunk. *Id.* at 6. The APD officers approached McGee but did not stand directly in front of her or make direct eye contact with her, and thus, she was unable to lipread though she could hear some of what was being said to her. *Id.* McGee claims that she understood that the officers noted her hearing aids, and one officer asked another whether they should use ASL to communicate with her. *Id.* McGee was asked

whether she understood the officers' directions, and she responded that she could not. *Id.*

McGee was then told she no longer had a ticket to board a plane that day and would need to leave the airport and re-book her flights. *Id.* at 7. McGee, who did not understand why she needed to leave the terminal, remained seated. *Id.* The APD officers then read McGee a notice of trespass which she claims was read in manner that she could not understand and was not handed to her to read herself. *Id.* McGee was then escorted in a wheelchair to the non-secure section of the airport. *Id.* On the way there she was verbally warned that if she refused to leave the airport in a rideshare vehicle she would be sent to jail; however, the officer who delivered the warning was behind McGee and she did not hear him. *Id.* When McGee was wheeled to the Arrivals area of the airport terminal, she stood up and was grabbed by an officer, handcuffed at her wrists, and put into a police car where officers went through her belongings and confiscated her phone. *Id.* at 8.

McGee spent the next three days at the Travis County Jail where staff noted her hearing disability but did not accommodate her by slowing down their speech, taking off their face masks, or writing down their communications for her. *Id.* McGee claims while she was detained her wrist was twisted again when her wedding ring was removed. *Id.* She claims that this incident (or else the moment she was handcuffed by APD at the airport) resulted in a broken wrist. *Id.* After her wrist was twisted at the Travis County Jail, she was given pain killers but did not get an X-ray or medical visit. *Id.* at 9.

When McGee was finally released and reunited with her belongings three days later, she was not allowed to charge her phone which she needed to control her hearing aids, and was forced to leave the jail lobby. *Id.* She collapsed on the sidewalk outside of the Travis County Jail where she was attended to by medics. *Id.* at 10. She was assisted into an Uber and flew back to Seattle the next day. *Id.* McGee claims that upon her return to Seattle, she required a part-time caretaker and intense psychotherapy to deal with the lasting psychological injuries she suffered. *Id.*

Based on these events, McGee brings a claim for violation of Title II of the Americans with Disabilities Act (the "ADA"), and violation of § 504 of the Rehabilitation Act of 1973 (the "RA") against the City of Austin and Travis County; wrongful arrest and excessive force in violation of 42 U.S.C. § 1983 under *Monell* against Officer Doe, and the City, or alternatively, the County; and a claim under the Texas Tort Claims Act (the "TTCA") for misuse of tangible, personal property against the City, or alternatively, the County. *Id.* at 10-18.

The City and the County move to dismiss each of McGee's claims. The City argues the ADA and RA claims should be dismissed because even if her disability was known to APD and Travis County offices, McGee failed to request an accommodation. Dkts. 9, at 2-5; 10, at 5. The City next argues the wrongful-arrest and excessive-force *Monell* claims should be dismissed because McGee has pleaded insufficient facts establishing a policy or practice and moving-force causation. Dkt. 9, at 5-8. The County moves to dismiss McGee's *Monell* claims on largely the same grounds but argues that McGee has also failed to allege that she was harmed by the acts of a

Travis County policymaker. Dkt. 10, at 5. As to McGee's TTCA claim against the City, the City argues that all of the factual allegations underlying McGee's TTCA claim concern actions of guards employed by Travis County or amount to an intentional tort, barred by the TTCA. Dkt. 9, at 9-11. As to McGees's TTCA claim against the County, the County argues the claim sounds as an intentional tort, for which the County's sovereign immunity is not waived under the TTCA. Dkt. 10, at 5.

## II.        LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id*. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## III.    DISCUSSION

### A.    ADA and Rehabilitation Act Claims

The City and County contend that McGee fails to state a claim under the ADA or RA because she has not pleaded that her disability and its limitations were known by City or the County employees involved in her arrest and detainment, and McGee did not request an accommodation in direct and specific terms. Dkts. 9, at 3-4; 10, at 6-7.  The City and County further contend that McGee has failed to establish that her disability, its limitations, and the necessary accommodations were open, obvious, and

apparent which would excuse her failure to directly request an accommodation. Dkts. 9, at 5; 10, at 7.

McGee responds that that there is well-established case law that states that a claimant with an open, obvious disability does not have to request an accommodation to state a claim under the ADA or RA. Dkt. 11, at 4. McGee further argues that courts have found that deafness is the type of limitation that is open, obvious, and apparent. *Id.* at 5. McGee states that the plain visibility of her hearing aids, the City's open discussion of whether she could hear APD officers, and the County's documentation of her hearing disability all demonstrate that both entities were on notice of her disability. *Id.*

Title II of the ADA provides that "'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *Windham v. Harris Cnty., Tex.*, 875 F.3d 229, 234 (5th Cir. 2017) (alteration omitted) (quoting 42 U.S.C. § 12132). Similarly, "Section 504 of the [RA] provides that '[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]'" *Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Trs.*, 855 F.3d 681, 690 (5th Cir. 2017) (quoting 29 U.S.C. § 794(a)). With regard to public entities, Congress intended that Title II "work in the same manner as Section 504," and jurisprudence interpreting

either statute is generally applicable to both. *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000) (citations omitted).

To make out a prima facie case under Title II, a plaintiff must show "(1) that [s]he is a qualified individual within the meaning of the ADA; (2) that [s]he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of h[er] disability." *Windham*, 875 F.3d at 235 (quoting *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004)). Likewise, "[t]he prima facie case of discrimination under the [RA] is operationally identical to the test under the ADA, requiring a plaintiff to allege: (1) the existence of a program or activity within the state which receives federal financial assistance; (2) the plaintiff is an intended beneficiary of the federal assistance; and (3) the plaintiff is a qualified handicapped person, who solely by the reason of her handicap has been excluded from participation in, been denied benefits from, or otherwise has been subject to discrimination under such program or activity." *Melton*, 391 F.3d at 676 n.8 (emphasis omitted). Because the legal standards and the jurisprudence of the ADA and RA are effectively the same, this undersigned's analysis of the ADA should be assumed to extend to the RA unless otherwise stated.

Neither the City nor the County dispute that McGee has met the first prong of her prima facie claim and that she is a qualified individual within the meaning of the ADA.  Dkts. 9, at 3; 10, at 7. The City and County do, however, contend that McGee

has not met the second or third prongs of her claim because neither entity failed to accommodate her because she did not request an accommodation and her disability, its limitations, and the appropriate accommodations were not open, obvious, and apparent. Dkts. 9, at 4; 10, at 7. Typically, the crux of the second prong is that it requires pleading that the plaintiff has been discriminated against by a public entity. For the sake of distilling the City and County's argument as to McGee's pleading deficiencies, if the second prong requires that McGee state her claim against public entities, the undersigned finds that she has done so. *See* 42 U.S.C. § 12131(1)(B) (defining "public entity" as "any department, agency, ... or other instrumentality of a State or States or local government").

The third element of a prima facie case under the ADA encompasses both the exclusion of benefits referenced in prong two, and the requirement that the exclusion or denial of benefits is by reason of the plaintiff's disability. A plaintiff can satisfy the third prong by advancing a theory of "failure to accommodate." *See Windham*, 875 F.3d at 235 (noting that the plaintiff's attempt to satisfy the third element of claim under Title II of the ADA was a theory of failure to accommodate). To succeed on a failure-to-accommodate theory, a plaintiff must "prove: (1) [s]he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the [public] entity; and (3) the entity failed to make reasonable accommodations [for that disability]." *Id.* at 236 (quoting *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015)). "Mere knowledge of the disability is not enough" to show that the covered entity knew of the disability and its consequential limitations. *Id.*

The plaintiff must "specifically identify the disability and resulting limitations and request an accommodation in direct and specific terms." *Id.* at 237 (internal citation and quotation marks omitted). If the plaintiff does not request a reasonable accommodation, "[s]he can prevail only by showing that the disability, resulting limitation, and necessary reasonable accommodation were open, obvious, and apparent to the entity's relevant agents." *Id.* (internal citation and quotation marks omitted). More specifically, the "open, obvious, and apparent" standard requires the plaintiff to show that the entity's agents "knew or should have known" of the plaintiff's disability, resulting limitation, and necessary reasonable accommodation. *Id.* at 237-38 (suggesting that evidence that the defendant's agents knew or should have known of the plaintiff's disability, resulting limitation, and necessary reasonable accommodation would have satisfied the "open, obvious, and apparent" standard).

The Fifth Circuit has held that well-understood and outwardly visible disabilities like "blindness, deafness, or being wheelchair-bound" are open and obvious. *Windham*, 875 F.3d at 238 (stating that "well-understood and outwardly visible disabilities like, say, blindness, deafness, or being wheelchair-bound … would … have been open, obvious, and apparent even if [the plaintiff] had never attempted to explain them") (internal quotation marks omitted). In this case, McGee has pleaded that she was wearing her hearing aids when she was arrested and while detained and that APD officers "noted her hearing aids" and asked one another whether they should use ASL to communicate with her, and that Travis County "documented her

disability in her jail records." Dkt. 6, at 6, 8. Specifically, during an intake evaluation at the Travis County Jail, a TCSO Nurse noted McGee was "hard-of-hearing with bilateral hearing aids." *Id.* at 9. The undersigned finds that McGee's allegations show that her disability, resulting limitation, and necesarry reasonable accommodations were open obvious and apparent to the County and City's relevant agents. *Windham*, 875 F.3d at 238. ("That deafness limits a person's ability to understand oral commands is plain.") Therefore, McGee's RA and ADA claims should not be dismissed for a failure to request an accommodation.

The City and County next argue that even if McGee has met her burden to state a prima facia claim under the ADA and RA, she can only recover the compensatory damages she seeks if she pleads that the discrimination was intentional. Dkts. 9, at 5; 10, at 8. The City and County contend that McGee fails to allege that the discrimination she faced was intentional. *Id.*

"[W]hen plaintiffs successfully prove a disability-discrimination or a failure-to-accommodate claim, they 'may only recover compensatory damages upon a showing of intentional discrimination.'" *Smith v. Harris Cnty., Texas*, 956 F.3d 311, 318 (5th Cir. 2020) (quoting *Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 575-76 (5th Cir. 2002). However, the Fifth Circuit has not "delineate[d] the precise contours" of this showing but has relied "on the widely accepted principle that intent requires that the defendant at least have actual notice." *Id.* (internal citation omitted). Deliberate indifference alone does not suffice. *Id.* In the context of a failure-to-accommodate

11

claim, intentional discrimination requires at least actual knowledge that an accommodation is necessary. *Id.*

In this case McGee has pleaded that she affirmatively "told [APD] officers she did not understand what was being said to her" and "notified the [Travis County] guards that she had a hearing disability and could not hear" and "plead[ed] to the [Travis County Jail] staff that she could not hear, Dkt. 6, at 7-9. McGee has thus alleged that the City and County were aware of her disability, knew that she could not understand their spoken communications, and that an accommodation may be necessary yet, made no effort to accommodate her. At this stage, the undersigned finds that McGee has pleaded a case of intentional discrimination that might give rise to compensatory damages. *Francois v. Our Lady of the Lake Hosp., Inc.*, 8 F.4th 370, 379 (5th Cir. 2021) (stating that "claims of intentional discrimination fail unless there is evidence the [defendant] actually knew that it was not effectively communicating with [plaintiff] with the methods it was using."); *Delano-Pyle*, 302 F.3d at 575-76 (affirming district court's finding of intentional discrimination when hearing-impaired arrestee could not understand the police officer, the officer was aware that his attempts to communicate were ineffective, and the officer failed to try more effective methods of communication); *Perez v. Drs. Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 185 (5th Cir. 2015) (holding that a plaintiff raised a genuine dispute of material fact where "on several occasions, an interpreter was requested but not provided," the defendant's chosen means of communication were "often ineffective," and the defendant "ignored clear indications" that further accommodation was

necessary); *Cadena v. El Paso Cnty.*, 946 F.3d 717, 726 (5th Cir. 2020) (holding that a plaintiff showed intentional discrimination when a jail's staff was subjectively aware of a detainee's need for a wheelchair, accommodated her only with crutches, watched her fall while using the crutches, and still refused to provide a wheelchair).

Based on the foregoing, the undersigned recommends that the County and City's motion to dismiss as to McGee's ADA and RA claim be denied.

### B.   *Monell* Excessive Force and Wrongful Arrest Claims

McGee asserts *Monell* claims against APD Officer Doe and the City for wrongful arrest without probable cause and use of excessive force that resulted in her broken wrist. Dkt. 6, at 15-17.  She alternatively asserts a *Monell* claim against the County in case her wrist was broken while she was detained by the County, rather than when she was arrested by APD. *Id.* at 17.  The City moves to dismiss these claims arguing McGee has  pleaded insufficient facts to support essential elements of her *Monell* claim, including identifying a policy or practice that was the moving force behind her injuries. Dkt. 9, at 5-9. The County moves to dismiss the *Monell* claim against it arguing that McGee has failed to plead each of the elements of her claim and because she is uncertain a Travis County actor was responsible for her injuries. Dkt. 10, at 5.

To prevail on her *Monell* claims, McGee must show that: "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018). "*Monell* plaintiffs [must] establish both the causal link ('moving force')

and the [public entity]'s degree of culpability ('deliberate indifference' to federally protected rights)." *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)); *see also id.* (observing that "where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability").

"[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Still, "a plaintiff is not required to single out the specific policymaker in his complaint; instead, a plaintiff need only plead facts that show that the defendant or defendants acted pursuant to a specific official policy, which was promulgated or ratified by the legally authorized policymaker." *Groden v. City of Dallas*, 826 F.3d 280, 282 (5th Cir. 2016).

An official policy "usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009). "To find a municipality liable for a policy based on a pattern, that pattern 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'" *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir.

2017) (internal citations omitted). A plausible pattern "requires similarity and specificity; [p]rior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question." *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 810 (5th Cir. 2017) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009)) (cleaned up). As for specificity, "a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts.'" *Pena*, 879 F.3d at 622 (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)). While no set number of incidents is necessary to establish a pattern, "[w]here the violations are flagrant or severe," a shorter pattern of conduct can demonstrate that "diligent governing body members would necessarily have learned of the objectionable practice and acceded to its continuation." *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984).

With those standards in mind, "the procedural posture of this case is distinguishable from much of the case law on establishing a pattern." *Oporto v. City of El Paso*, No. EP-10-CV-110, 2010 WL 3503457, at *6 (W.D. Tex. Sept. 2, 2010). Cases supporting more established patterns amounting to official policy than are alleged here occurred at the summary-judgment stage. *See Davidson*, 848 F.3d at 396-97; *Hicks-Field*, 860 F.3d at 810; *Carnaby v. City of Houston*, 636 F.3d 183, 189-90 (5th Cir. 2011); *Peterson*, 588 F.3d at 850; *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2005). At the motion-to-dismiss stage, a more general articulation of a pattern constituting a policy may suffice since the "the Court must only evaluate

whether Plaintiffs pled sufficient facts that would allow it to draw the reasonable inference that Defendants are liable for the alleged misconduct." *Oporto*, 2010 WL 3503457, at *6 (cleaned up); *see also, e.g., Reyes v. City of Austin, Inc.*, No. 1:21-CV-00992-LY-SH, 2022 WL 789333, at *4 (W.D. Tex. Mar. 15, 2022) (allegations of "about 10 [or] so" arrests of individuals who filmed policy activity sufficiently pleaded a practice or custom); *Sanchez v. Gomez*, 283 F. Supp. 3d 524, 535-36 (W.D. Tex. 2017) (complaint that "describe[d] nine specific instances of EPPD officers using excessive force against mentally ill victims" survived motion to dismiss); *Oporto*, 2010 WL 3503457, at *5-6 (allegations of thirty-two incidents of excessive deadly force over fifteen years that were "described in varying degrees of detail" sufficiently stated a policy or practice under *Monell*); *Myart v. City of San Antonio*, No. SA-06-CA-0256 FB(NN), 2007 WL 26805, at *2 (W.D. Tex. Jan. 3, 2007), *supplemented sub nom. Myart v. City of San Antonio*, No. CIVASA06CA0256FBNN, 2007 WL 869579 (W.D. Tex. Mar. 20, 2007) (specifically identifying the allegedly unlawful policy was sufficient to survive motion to dismiss).

"The 'moving force' inquiry imposes a causation standard higher than 'but for' causation." *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 280 (5th Cir. 2015). There must be a "direct causal connection ... between the policy and the alleged constitutional deprivation." *Id.* (quotation omitted).

### 1.   *Monell* claims against the City

As to her *Monell* claim for wrongful arrest, McGee states that she was "arrested for criminal trespass without having been warned in a way she could

understand" by an APD officer acting under color of law "without probable cause" which caused her to "suffer[] mentally and physically." Dkt. 6, at 16. She claims, "[t]he widespread practice of reading trespass notices in an inaccessible manner was the moving force behind this violation of [her] civil rights" because she did not "know she had been issued the warning and was arrested nonetheless." *Id.* She claims this policy was "actually known, constructively known, and/or ratified by the City and its policymakers, including, but not limited to Chief Chacon and was promulgated with deliberate indifference to Plaintiff's rights." *Id.* Lastly McGee states "the known and obvious consequences of a policy of reading trespass notices even to hearing impaired travelers was that City of Austin employees would be placed in recurring situations where the constitutional rights of innocent people, like [McGee] would be violated." *Id.*

As to her *Monell* claim for excessive force, McGee states Officer Doe was "acting under color of law when he or she broke [McGee]'s wrist" though "she posed no threat whatsoever." *Id.* at 17. She contends a "reasonable police officer … would known that this level of force on a small, elderly, woman was excessive and cruel" and claims she "suffered mentally and physically" as a result of the Officer Doe's actions. *Id.* She alleges "policies and practices includ[ing] failure to remove masks, failure to communicate commands (such as a command to leave the airport …) in a manner that was accessible and understandable" were the moving force behind the use of excessive force. *Id.* She states these "widespread practices" were "actually known, constructively known and/or ratified by the City and its policymakers, including, but

not limited, Chief Chacon … and were promulgated with deliberate indifference." *Id.* Here, too, she states "the known and obvious consequences of these polices was that City of Austin … employees would be place in recurring situations where the constitutional rights of innocent people, like [McGee], would be violated." *Id.*

Because McGee has not alleged the existence of a written policy to establish the policy prong of her *Monell* claims against the City, she is required to allege a pattern that allows the inference that the City is liable for a practice that is so common and well-settled as to constitute a custom that rises to the level of municipal policy. The undersigned finds that McGee has failed to do so with respect to her wrongful-arrest claim stemming from alleged practice of reading trespass notices in an inaccessible manner. She has also failed to do so with respect to her excessive-force claim stemming from the failure to remove masks, and the failure to communicate commands in a manner that was accessible and understandable. The undersigned acknowledges that "the procedural posture of this case is distinguishable from much of the case law on establishing a pattern." *Oporto,* 2010 WL 3503457, at *6. At the motion-to-dismiss stage, a more general articulation of a pattern constituting a policy may suffice since the "the Court must only evaluate whether Plaintiffs pled sufficient facts that would allow it to draw the reasonable inference that Defendants are liable for the alleged misconduct." *Id.* (cleaned up).

At a minimum, McGee must plead sufficient facts to allow the undersigned to infer that there is more than one instance in which the City has acted in accordance with the alleged policies. *Bennett v. City of Slidell,* 728 F.2d 762, 768 n. 3 (5th Cir.

1984) (en banc), *cert. denied,* 472 U.S. 1016 (1985) ("isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy").

*Myart v. City of San Antonio* is instructive. No. SA-06-CA-0256 FB(NN), 2007 WL 26805, at *2. In that case, the plaintiff alleged that the City: "instituted policies which created a climate in which the type of violent and abusive behavior exhibited by [the defendant] was allowed to occur"; "ratifie[d] and approve[d] such violent behavior by its police department by failing to take appropriate disciplinary measures and by ignoring abusive conduct on the part of its police officers, *both prior to the event made the basis of this suit and thereafter*." *Id.* (emphasis added). The plaintiff further alleged that the City's official policy "in authorizing, ratifying and/or approving such brutal conduct of its officers, is a *persistent and widespread practice of city officials and/or employees and is so common as to constitute a custom* that fairly represents municipal policy of the City...." *Id.* (emphasis added). Thus, even though the plaintiff did not allege specific instances of misconduct, the pleadings allowed the court to infer that generally, there were prior and subsequent incidents such that the City's violative practices were persistent and widespread enough to constitute a City custom or policy.

McGee has not met this most lenient of standards for showing a pattern constituting a policy. Her complaint appears to allege one incident demonstrating the policies at issue—the incident that is the basis of her suit. At most she states only that "the known and obvious consequences of these policies was that City of Austin

… employees would be placed in recurring situations where constitutional rights … would be violated." Dkt. 6, at 16-17.  However, she has not pleaded the existence of prior or subsequent incidents, nor has she alleged that the prohibited conduct is so persistent and widespread as to constitute a City of Austin policy. Based on the pleadings, the undersigned cannot infer that the conduct alleged by McGee  rises to the level of a City of Austin policy, custom, or practice for the purposes of her *Monell* claim.

Because McGee has failed to meet the first element of her *Monell* claims against the City of Austin, the undersigned need not substantively reach the parties' arguments concerning whether McGee has pleaded the existence of a policymaker, nor whether McGee has demonstrated that the policies at issue were the moving force behind the alleged wrongful arrest and use of excessive force. Based on the foregoing, the undersigned recommends that the District Court grant the City of Austin's motion to dismiss, Dkt. 9, with respect to McGee's claims regarding the City's alleged unconstitutional policies, customs, or practices.

2.      *Monell* claims against the County

McGee's alternative *Monell* claim against the County for excessive force is largely the same as her claim against the City. She alleges that the County's "policies and practices [including] failure to remove masks, failure to communicate commands (such as a command to … remove her wedding ring) in a manner that was accessible or understandable, and failure to allow her to use her phone to adjust her hearing aids" resulted in her injuries. Dkt. 6, at 17. She claims these "widespread practices

… were actually known, constructively known, and/or ratified by … the County and its policymakers, including, but not limited to Sheriff Hernandez and were promulgated with deliberate indifference to [McGee's] rights." *Id*. She states: "the known and obvious consequences of these polices was that … Travis County employees would be placed in recurring situations where the constitutional rights of innocent people, like [McGee], would be violated." *Id*.

As with her *Monell* claim for excessive force against the City, here, McGee has failed to show a pattern constituting a policy because she alleges one incident demonstrating the policy at issue. Besides the incident that gives rise to her claim against the County, she has not pleaded any prior or subsequent issues and has not alleged that the prohibited conduct is so persistent or widespread so as to constitute a Travis County policy. Based on the pleadings, the undersigned cannot infer that the conduct alleged by McGee rises to the level of a Travis County policy, custom, or practice for the purposes of her *Monell* claim.

Here, too, because McGee has failed to meet the first element of her *Monell* claims against Travis County, the undersigned need not substantively reach the parties' arguments concerning whether McGee has pleaded the existence of a policymaker, nor whether McGee has demonstrated that the policies at issue were the moving force behind the alleged use of excessive force. Based on the foregoing, the undersigned recommends that the District Court grant the Travis County's motion to dismiss, Dkt. 10, with respect to McGee's claims regarding the County's alleged unconstitutional policies, customs, or practices.

### C.     Texas Tort Claims Act Claims

McGee brings a claim under the TTCA against the City of Austin, or alternatively, Travis County for misuse of tangible, personal property. Dkt. 6, at 18. She alleges that APD Office Doe broke her wrist while handcuffing her as she was arrested, or alternatively, that TCSO Officer Doe broke her wrist when using handcuffs to move "the confused and hearing-impaired [McGee] in and out of her clothes." *Id.* at 2, 18.[1] She claims that though "the application of the handcuffs was intentional, the subsequent misuse and manipulation of the handcuffs was unintentionally harmful to" her. *Id.* at 18.

The City moves to dismiss McGee's TTCA claim arguing that the "only tort, if any, alleged against an APD officer" is that an APD officer "forcibly grabbed her left wrist and handcuffed her" which constitutes an intentional tort, a cause of action for which the TTCA does not waive a governmental unit's immunity. Dkt. 9, at 10. To the extent, McGee claims she has pleaded negligence, the City contends she cannot circumvent the intentional-tort exception to waiver when the facts as pleaded constitute an intentional tort and the gravamen of her complaint involves a claim for the use of excessive force. *Id.* at 10. Similarly, the County moves to dismiss McGee's TTCA claim, also arguing that her claim arises out of an intentional tort for which

---

[1] McGee's excessive-force claim is also premised on either APD Officer Doe or Travis County Officer Doe breaking her wrist during her arrest or detainment. Dkt. 6, at 2. She states that if she "learn[s] that [she] was not intentionally manhandled but was rather unintentionally injured by Officer's Doe's use of handcuffs for the improper purpose of moving a hearing impaired person around a small room or encouraging her to put her leg in pants, then [the TTCA] claim should prevail." *Id.* at 3. In sum, whichever entity or officer broke her wrist, she claims it was broken through the use of excessive force, or by misuse of handcuffs.

the County's sovereign immunity is not waived. Dkt. 10, at 15. The County also contends that McGee cannot maintain her TTCA claim as an alternative to her excessive-force claims because a plaintiff may not maintain a negligence claim where the claim is based on the same conduct as an intentional-tort claim. *Id.*

McGee responds that her alternative TTCA claim is based on a claim of "true negligence" and that as an alternative to her excessive-force claim she alleges that "Officer Doe never intended to apply force and never intended to harm" her. Dkt. 11, at 12. She contends that she "should be allowed to conduct discovery to determine who broke her wrist under what circumstances (whether it was excessive force or whether it was a terrible accident [constituting negligence])" and states that at this stage of the case alternative theories are appropriate. *Id.*

The TTCA provides that "[a] governmental unit in the state is liable for: ... personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code § 101.021(2). The TTCA creates a limited waiver of sovereign immunity "for certain negligent conduct, but it does not waive immunity for claims arising out of intentional torts." *City of Watauga v. Gordon,* 434 S.W.3d 586, 594 (Tex. 2014). "If a plaintiff pleads facts which amount to an intentional tort, no matter if the claim is framed as negligence, the claim generally is for an intentional tort and is barred by the TTCA." *Harris Cnty. v. Cabazos*, 177 S.W.3d 105, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

Under Texas law, then, the question is whether McGee's claim arises out of an intentional tort. Although she has attempted to bring a claim for negligent use of handcuffs arising from her arrest or detainment, elsewhere she has described her claims arising from her arrest and detainment as excessive force. McGee pleads:

> Mrs. McGee also brings a claim for excessive force against Officer Doe. Officer Doe is the as-yet unidentified City of Austin or Travis County law enforcement officer who broke her wrist.

> [t]he arresting Austin Police Officer who broke McGee's wrist by using excessive force.

> When she questioned what was happening, one [TCSO] guard twisted the handcuffs around her wrist so tightly that Mrs. McGee felt something in [her] wrist give out.

> Officer Doe was acting under color of law when he or she broke Mrs. McGee's wrist. Mrs. McGee posed no threat whatsoever. A reasonable human being, much less a reasonable police officer or correctional officer would know that this level of force on a small, elderly woman was excessive and cruel.

> [TCSO] Officer Doe became frustrated with Mrs. McGee's inability to understand and took matters into his or her own hands. Through moving or pushing Mrs. McGee, excessive force was used and her wrist was broken.

Dkt. 6, at 2, 8, 17.

The undersigned finds that the gravamen of McGee's claims is that APD or TCSO Officer Doe used excessive force while arresting her or while moving her around her cell, and the same actions that give rise to her negligence claim underlie her excessive-force claim. Use of excessive force is an intentional tort and an alternative negligence pleading cannot save the claim where the claim is based on the same conduct as the intentional-tort claim. *Saenz v. City of El Paso*, 637 F. App'x 828, 830-31 (5th Cir. 2016); *Cox v. City of Fort Worth*, 762 F. Supp. 2d 926, 935 (N.D.

Tex. 2010). McGee's claim is thus a claim for which sovereign immunity has not been waived. *Little v. Schafer,* 319 F. Supp. 190, 192 (S.D. Tex. 1970) (holding that where the essence of a claim under the Texas Tort Claims Act arises from intentional torts, allegations of negligence are insufficient to avoid the § 101.057 exception to liability); *City of San Antonio v. Dunn,* 796 S.W.2d 258, 261 (Tex. App.—San Antonio 1990, writ denied) (holding that there was no waiver of municipal immunity under the Texas Tort Claims Act where claims arose out of the intentional torts of excessive force and false arrest).

Nor can McGee avoid this bar by pleading negligence alternatively. A plaintiff may not maintain a negligence claim under the TTCA where the claim is based on "the same conduct" as the intentional-tort claim. *See Tex. Dep't of Pub. Safety v. Petta,* 44 S.W.3d 575, 580 (Tex. 2001); *see also Goodman v. Harris Cnty.,* 571 F.3d 388, 394 (5th Cir. 2009) (explaining that the TTCA excludes "allegations against a governmental unit arising out of the same conduct that formed the basis of the intentional tort claims against its employee"). In this case, McGee alleges no distinct facts aside from those that form the basis of the excessive-force claim. Because McGee's negligence claim relies on the same conduct as the excessive-force allegations, it falls outside the TTCA's "limited waiver of sovereign immunity." *Goodman,* 571 F.3d at 394 (internal quotation marks and citation omitted).

Based on the foregoing the TTCA claim against the City and County should be dismissed.

### D.     Leave to Amend

In her response to the City and County's motions to dismiss, McGee requests leave to amend in the event the District Court finds that there are deficiencies in her pleadings and grants either motion. Dkts. 11, at 12-13. Should the District Judge dismiss McGee's *Monell* and TTCA claims, and if McGee still wants to amend her pleadings, she should file a motion for leave to amend pursuant to Local Rules  CV-15(b) and CV-7(b) governing amended pleadings, which state that that "[w]hen a motion for leave to file a pleading, motion, or other submission is required, an executed copy of the proposed pleading, motion, or other submission shall be filed as an exhibit to the motion for leave." W.D. Tex. Loc. R. CV-15(b); *id.* CV-7(b). Her request for leave to amend at this time should be denied.

## IV.     RECOMMENDATION

In   accordance   with   the   foregoing   discussion,   the   undersigned **RECOMMENDS** that the District Court **DENY IN PART** and **GRANT IN PART** the City's and County's Motions, Dkts. 9; 10. Specifically the District Court should **DENY** the motions with respect to McGee's ADA and RA claims and **GRANT** the motions with respect to the *Monell* and TTCA claims. McGee's request for leave to amend should be **DENIED**.

## V.     WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d

419, 421 (5th Cir. 1987).  A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED June 28, 2024.

_____

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE