UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| KAREN B MCGEE,<br>*Plaintiff* | §<br>§<br>§ |
| v. | §    No. 1:23-CV-00820-RP |
| | § |
| CITY OF AUSTIN, TRAVIS<br>COUNTY, ET AL.,<br>*Defendants* | §<br>§<br>§<br>§ |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE ROBERT L. PITMAN
       UNITED STATES DISTRICT JUDGE

Before the Court is Defendant Travis County's motion to dismiss Plaintiff Karen McGee's fourth amended complaint, Dkt. 96, and all related briefing. In McGee's first amended complaint, she brought claims under Title II of the Americans with Disabilities Act (the "ADA") and § 504 of the Rehabilitation Act of 1973 (the "RA") against the County. Dkt. 6, at 10-14. The undersigned recommended that the District Judge deny the County's motion to dismiss those claims. Dkts. 10 (motion to dismiss); 32, at 26 (report and recommendation). The District Judge adopted the recommendations. Dkt. 66. After McGee filed her third amended complaint, the undersigned again recommended that the District Judge deny the County's motion to dismiss. Dkt. 84. The District Judge has not yet ruled on that report and recommendation.

1

As it pertains to Travis County, McGee's fourth amended complaint is essentially identical to her first and third. *See* Dkt. 96, at 1-2. Accordingly, the County's renewed motion to dismiss, Dkt. 96, is substantively similar to the ones this Court previously considered. *See* Dkts. 10; 32; 63; 66; 84.[1] As before, the undersigned recommends that the District Judge deny the motion.

## I.    BACKGROUND

Plaintiff Karen McGee brings this civil rights action based on her arrest by Austin police at the Austin-Bergstrom International Airport ("ABIA") and detainment at a Travis County jail. Dkt. 89, at 2. McGee, who has severe hearing loss, relies on a combination of hearing aids and lip reading for communication. *Id.* at 4. On September 13, 2022, McGee arrived at ABIA from Atlanta and awaited a connecting flight to Seattle. *Id.* at 5. While sitting at the departure gate, she turned off her hearing aids from her cell phone using a mobile application. *Id.* As her departure time approached and no boarding line formed, McGee turned her hearing aids back on and approached the gate agents who explained that there had been an announcement about a gate change, and she had missed her flight. *Id.*

The gate agents issued a ticket for a later flight on another airline. *Id.* While awaiting her new flight, McGee learned that there was a boarded flight headed to Seattle that had not yet left the airport. *Id.* McGee approached the gate agents to ask

---

[1] Given that McGee's fourth amended complaint did not substantively change her claims against Travis County, McGee and Travis County jointly moved to rely on the briefing associated with Defendants' prior motion to dismiss, Dkt. 63, the report and recommendation, Dkt. 84, and Defendants' objections to that report and recommendation, Dkts. 85; 90. Because Travis County subsequently filed a new motion to dismiss, Dkt. 96, which is now fully briefed, the undersigned **DISMISSES** the motion to consider prior briefing, Dkt. 90, as **MOOT**.

2

whether she could switch to the earlier flight. *Id.* She spoke in a loud voice because of incorrect settings on her hearing aids. *Id.* at 5-6. In response to McGee's inquiry, three successive gate agents shook their heads "no" or did not respond to her. *Id.* McGee states that these gate agents did not write down a response or look at her directly, so she was unable to fully understand their responses. *Id.*

While McGee stood at the gate agents' desk, Transportation Security Administration ("TSA") officers approached her, spoke with her for a few minutes, and continued their rounds. *Id.* Later, officers from the Austin Police Department ("APD") arrived responding to a call concerning a 70-year-old woman with severe hearing loss who was reportedly confused and frustrated and who the gate agents claimed was drunk. *Id.* at 6. The APD officers approached McGee but did not stand directly in front of her or make direct eye contact with her. *Id.* McGee claims that the officers noted her hearing aids and that one officer asked another whether they should use American Sign Language ("ASL") to communicate with her. *Id.* at 7. When the officers asked McGee whether she understood their directions, she responded that she could not. *Id.*

An officer informed McGee that she no longer had a ticket to board a plane that day and would need to leave the airport and re-book her flights. *Id.* at 7. McGee, who did not understand why she needed to leave the terminal, remained seated. *Id.* The APD officers then read McGee a notice of trespass. *Id.* They then escorted McGee in a wheelchair to the non-secure section of the airport. *Id.* at 8. On the way there, officers verbally warned McGee that if she refused to leave the airport in a rideshare

3

vehicle she would be sent to jail; however, the officer who delivered the warning was behind McGee and she did not hear him. *Id.* at 8. When McGee arrived in the Arrivals area of the airport terminal, she stood up from her wheelchair. *Id.* at 8-9. An officer grabbed her, handcuffed her wrists, and put her into a police car. *Id.* at 9. Officers went through McGee's belongings and confiscated her phone, which McGee used to control her hearing aids. *Id.*

McGee spent the next three days at the Travis County Jail, where staff noted her hearing disability but did not accommodate her by slowing down their speech, taking off their face masks, or writing down their communications for her. *Id.* at 9-10. McGee claims that while she was detained, jail staff "forcibly twisted" her wrist to remove her wedding ring. *Id.* at 10. She further alleges that when she questioned what was happening, "one guard twisted her wrist so tightly that [she] felt something in [her] wrist pop." *Id.* McGee then lost consciousness. *Id.* Afterward, jail staff gave McGee pain killers but did not order an X-ray or send McGee to the emergency room. *Id.*

When McGee was finally released and reunited with her belongings three days later, jail staff did not allow her to charge her phone to use with her hearing aids. *Id.* at 11. McGee collapsed on the sidewalk outside of the jail. *Id.* Medics helped McGee into an Uber, and she flew back to Seattle the next day. *Id.* McGee claims that upon her return to Seattle, she required a part-time caretaker and psychotherapy to deal with lasting psychological injuries. *Id.*

Based on these events, McGee brings claims for violations of the ADA and RA against Travis County. The County now moves to dismiss McGee's ADA and RA claims, arguing primarily that she fails to plead that Travis County denied her certain benefits or services and that such denial was by reason of her disability, as required to make out a prima facie case of discrimination under the ADA and the RA. *See* Dkt. 96, at 7-11. It adds that McGee cannot make out a claim for compensatory damages because she has not shown that the County's alleged discrimination was intentional. Dkt. 96, at 11-13.[2]

## II.  LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter,

---

[2] The County also asks the Court to dismiss McGee's claims for punitive damages. Dkt. 96, at 12. McGee does not ask for such damages against the County in her complaint. *See* Dkt. 89. However, the undersigned agrees with the County that punitive damages would not be appropriate here. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002).

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey*, 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III.     DISCUSSION

### A.     Defendants' motion to dismiss McGee's ADA and RA claims for failure to state a claim should be denied.

Title II of the ADA provides that "'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *Windham v. Harris Cnty., Tex.*, 875 F.3d 229, 234 (5th Cir. 2017) (alteration omitted) (quoting 42 U.S.C. § 12132). Similarly, the RA "provides that '[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]'" *Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Trs.*, 855 F.3d 681, 690 (5th Cir. 2017) (quoting 29 U.S.C. § 794(a)). With regard to public entities, Congress intended that Title II "work in the same manner as Section 504," and jurisprudence interpreting either statute is generally applicable to both. *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000) (citations omitted).

To make out a prima facie case under Title II, a plaintiff must show "(1) that [s]he is a qualified individual within the meaning of the ADA; (2) that [s]he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of

7

benefits, or discrimination is by reason of h[er] disability."[3] *Windham*, 875 F.3d at 235 (quoting *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004)). Likewise, "[t]he prima facie case of discrimination under [the RA] is operationally identical to the test under the ADA, requiring a plaintiff to allege: (1) the existence of a program or activity within the state which receives federal financial assistance; (2) the plaintiff is an intended beneficiary of the federal assistance; and (3) the plaintiff is a qualified handicapped person, who solely by the reason of her handicap has been excluded from participation in, been denied benefits from, or otherwise has been subject to discrimination under such program or activity." *Melton*, 391 F.3d at 676 n.8 (emphasis omitted). Because the legal standards and the jurisprudence of the ADA and the RA are effectively the same, the undersigned's analysis of the ADA extends to the RA unless otherwise stated.

The County does not dispute that McGee has met the first prong of her prima facie claim and that she is a qualified individual within the meaning of the ADA. Dkt. 96, at 7. The County does, however, contend that McGee has not met the second or third prongs.[4] Regarding prong two, the County argues that McGee failed to specify "what specific accommodation was withheld, or what service, benefit, or activity she

---

[3] The undersigned refers to these elements as the first, second, and third prongs according to the way they are numbered here.

[4] As stated in the undersigned's report and recommendation regarding Travis County's motion to dismiss McGee's first amended complaint, the second prong requires pleading that the plaintiff has been discriminated against by a public entity. Dkt. 32, at 9. The undersigned finds that she has sufficiently pleaded this prong. *See* 42 U.S.C. § 12131(1)(B) (defining "public entity" as "any department, agency, ... or other instrumentality of a State or States or local government").

lost access to[.]" *Id.* In contrast to the County's arguments, McGee clearly alleges that County agents failed to accommodate her hearing disability through refusing to slow down their speech, take off their masks so she could read their lips, or write down information. Dkt. 89, at 10. County agents also denied McGee access to her phone, which she used to control her hearing aids. *Id.* at 11. McGee further alleges that this treatment deprived her of access to the "services, benefits, activities, programs, or privileges" the County provides to hearing individuals. *Id.* at 13. The undersigned therefore finds that McGee has adequately pleaded the second prong.

The third prong of a prima facie case under the ADA encompasses both the exclusion of benefits referenced in prong two and the requirement that the exclusion or denial of benefits is by reason of the plaintiff's disability. A plaintiff can satisfy the third prong by advancing a theory of "failure to accommodate." *See Windham*, 875 F.3d at 235 (noting that the plaintiff's attempt to satisfy the third element of claim under Title II of the ADA was under a theory of failure to accommodate).

To succeed on a failure-to-accommodate theory, a plaintiff must "prove: '(1) [s]he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the [public] entity; and (3) the entity failed to make reasonable accommodations [for that disability].'" *Id.* at 236 n.8 (quoting *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015)). "Mere knowledge of the disability is not enough" to show that the covered entity knew of the disability and its consequential limitations. *Id.* The plaintiff must "specifically identify the disability and resulting limitations and request an accommodation in direct and specific terms."

*Id.* at 237 (internal citation and quotation marks omitted). If the plaintiff does not request a reasonable accommodation, "[s]he can prevail only by showing that the disability, resulting limitation, and necessary reasonable accommodation were open, obvious, and apparent to the entity's relevant agents." *Id.* (internal citation and quotation marks omitted). More specifically, the "open, obvious, and apparent" standard requires the plaintiff to show that the entity's agents "knew or should have known" of the plaintiff's disability, resulting limitation, and necessary reasonable accommodation. *Id.* at 237-38 (suggesting that evidence that the defendant's agents knew or should have known of the plaintiff's disability, resulting limitation, and necessary reasonable accommodation would have satisfied the "open, obvious, and apparent" standard).

The Fifth Circuit has held that well-understood and outwardly visible disabilities like "blindness, deafness, or being wheelchair-bound" are open and obvious. *Id.* at 238 (stating that "well-understood and outwardly visible disabilities like, say, blindness, deafness, or being wheelchair-bound … would … have been open, obvious, and apparent even if [the plaintiff] had never attempted to explain them" (internal quotation marks omitted)). As the undersigned previously found, McGee has pleaded that she was wearing her hearing aids while detained and that the County "documented her disability in her jail records." Dkt. 89, at 9. Specifically, a County jail employee noted in writing that McGee was "hard-of-hearing with bilateral hearing aids." *Id.* at 10. That McGee failed to notify staff that her hearing aids were

10

controlled by her phone does not, as the County argues, make her disability any less open and obvious. *See* Dkt. 96, at 9; *see Windham*, 875 F.3d at 237-38.

In its reply, the County argues that while McGee's disability may be open and obvious, she has failed to plead that the resulting limitations and necessary reasonable accommodations were also open and obvious. Dkt. 99, at 2-3. It is true that the County's knowledge of McGee's disability "is different from knowledge of the resulting limitation" and "knowledge of the necessary accommodation." *Windham*, 875 F.3d at 238. But contrary to the County's assertions, McGee has pleaded that the resulting limitation and necessary accommodation were open and obvious. McGee states that she "wore hearing aids and informed the jail employees more than 20 times that she could not hear or understand what was being said." Dkt. 58, at 11. At a minimum, these communications were sufficient to put the County on notice that McGee could not hear them and that alternative steps were required to communicate with McGee. As the Fifth Circuit held in *Windham*, "[t]hat deafness limits a person's ability to understand oral commands is plain." *Windham*, 875 F.3d at 239.

The County further argues that McGee does not plead a "connection" between the alleged lack of effective communication by Travis County staff and "a specific lack of access to some service or benefit." Dkt. 99, at 5. In particular, the County asserts that McGee "has not offered more than speculation that a lack of communication with anyone affiliated with Travis County actually *caused* her wrist injury or any other specific harm or denial of benefits." *Id.* at 5 (emphasis in original). The undersigned disagrees. For example, McGee states that "instead of effectively communicating

11

their request" that McGee remove her wedding ring, "jail staff forcibly twisted McGee's wrist." Dkt. 89, at 10. When McGee could not understand the guards' request *because she could not hear them*, she alleges that one guard "twisted her wrist so tightly that [she] felt something … pop." *Id.* Through these allegations, McGee also pleads that the County discriminated against her *because of* her disability. *Id.*; *see* Dkt. 99, at 7 (arguing that McGee "has not explained what service denial, or any lack of access, was because of her disability"). Rather than an assertion of mere inattention to her needs, McGee pleads that the County denied her access to benefits on account of her disability by injuring her when she could not understand instructions from the guards. Dkt. 89, at 10; *see* Dkt. 99, at 8 (arguing that McGee "cannot, by merely asserting inattention to her needs, or exposure to unsafe conditions, state a disability discrimination claim"); *cf. Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012) (holding that there was no evidence that leaving a prisoner with limited ability to walk on the floor of a van had any connection to his alleged disability because the ADA "is not violated by a person's simply failing to attend to the medical needs of its disabled prisoners" (internal quotation marks omitted)).[5] In contrast to *Nottingham*, where the plaintiff failed to provide evidence at the summary-judgment stage that

---

[5] Defendants' invocation of *Martinez v. City of Richland Hills*, 846 F. App'x 238 (5th Cir. 2021), is unavailing. *See* Dkt. 99, at 7. Defendants assert that like Martinez, McGee fails to state a claim under the ADA or RA because she does not allege that Travis County denied her benefits *because of* her disability. Dkt. 99, at 7; *see Martinez*, 846 F. App'x at 245-46. But unlike in *Martinez*, where the plaintiff did not "allege or explain *how* her alleged disability of epilepsy *prevented* her access to [defendant city's] non-emergency or chronic medical care," McGee alleges that she was denied certain benefits because she could not hear the guards' communications on account of her disability. Dkt. 89, at 10; *see Martinez*, 846 F. App'x at 245 (emphasis in original).

12

his medical needs were ignored because of his disability—which was unknown to jail staff—here McGee alleged that she was injured because of the County's failure to accommodate her known disability. *See Nottingham*, 499 F. App'x at 377.

The undersigned therefore finds that McGee's allegations show that her disability, resulting limitation, and necessary reasonable accommodations were open, obvious, and apparent to the County's agents. *Windham*, 875 F.3d at 238. She has therefore adequately pleaded the third prong, and her ADA and RA claims should not be dismissed.

### B. Because McGee may recover compensatory damages, Defendants' motion to dismiss McGee's request for such relief should be denied.

The County next argues that even if McGee has met her burden to state a prima facie claim under the ADA and RA, she can only recover compensatory damages if she pleads that the discrimination was intentional. Dkt. 96, at 11. The County contends that McGee fails to allege that the discrimination she faced was intentional. *Id.*

"[W]hen plaintiffs successfully prove a disability-discrimination or a failure-to-accommodate claim, they 'may only recover compensatory damages upon a showing of intentional discrimination.'" *Smith v. Harris Cnty., Tex.*, 956 F.3d 311, 318 (5th Cir. 2020) (quoting *Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 575-76 (5th Cir. 2002)). However, the Fifth Circuit has not "delineate[d] the precise contours" of this showing, instead relying "on the widely accepted principle that intent requires that the defendant at least have actual notice." *Id.* (internal citation omitted). Deliberate

13

indifference alone does not suffice. *Id.* In the context of a failure-to-accommodate claim, intentional discrimination requires at least actual knowledge that an accommodation is necessary. *Id.*

In this case McGee has pleaded that she affirmatively "notified the [Travis County] guards that she had a hearing disability and could not hear." Dkt. 89, at 9. McGee has thus alleged that the County was aware of her disability, knew that she could not understand spoken communications from County staff, and knew an accommodation may be necessary—yet the County made no effort to accommodate her. The undersigned again finds that McGee has pleaded a case of intentional discrimination that might give rise to compensatory damages. *Francois v. Our Lady of the Lake Hosp., Inc.*, 8 F.4th 370, 379 (5th Cir. 2021) (stating that "claims of intentional discrimination fail unless there is evidence the [defendant] actually knew that it was not effectively communicating with [the plaintiff] with the methods it was using"); *Delano-Pyle*, 302 F.3d at 575-76 (affirming the district court's finding of intentional discrimination when hearing-impaired arrestee could not understand the police officer, the officer was aware that his attempts to communicate were ineffective, and the officer failed to try more effective methods of communication); *Perez v. Drs. Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 185 (5th Cir. 2015) (per curiam) (holding that a plaintiff raised a genuine dispute of material fact where "on several occasions, an interpreter was requested but not provided," the defendant's chosen means of communication were "often ineffective," and the defendant "ignored clear indications" that further accommodation was necessary); *Cadena v. El Paso*

*Cnty., Tex.*, 946 F.3d 717, 726 (5th Cir. 2020) (holding that a plaintiff showed intentional discrimination when a jail's staff was subjectively aware of a detainee's need for a wheelchair, accommodated her only with crutches, watched her fall while using the crutches, and still refused to provide a wheelchair).

Based on the foregoing, the undersigned recommends that the District Judge deny the County's motion to dismiss McGee's request for compensatory damages under the ADA and the RA.

## IV.    RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Judge **DENY** Travis County's motion to dismiss, Dkt. 96. The undersigned **DISMISSES** the motion to consider prior briefing, Dkt. 90, as **MOOT**.[6]

The referral of this case to the Magistrate Judge should now be canceled.

## V.    WARNINGS

The parties may file objections to this report and recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Judge need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after the party is served with a copy of the report shall bar that party from *de novo* review by

---

[6] *See supra* n.1.

the District Judge of the proposed findings and recommendations in the report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED July 2, 2025.

_____
DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE