# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **KAREN B MCGEE,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **No. 1:23-CV-00820-RP** |
| | § | |
| **TRAVIS COUNTY,  OFFICER** | § | |
| **DOE 1, ALFREDO GONZALES,** | § | |
| **ANTHONY COLEMAN, RAYLYNN** | § | |
| **TAYLOR, LORI REID,** | § | |
| **FELICITAS PEREZ RODRIGUEZ,** | § | |
| **JEZIKAH BLIZZ CUBILLAS,** | § | |
| **STEVEN HAYES, ASHLEY** | § | |
| **POESCHL,** | § | |
| *Defendants* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE ROBERT PITMAN
       UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff Karen McGee's motion for summary judgment, Dkt. 120, Defendant Travis County's (the "County") motion for summary judgment, Dkt. 121, and all related briefing. After reviewing the filings and the relevant law, the undersigned will recommend that the District Judge deny both motions.

## I.    BACKGROUND

This is a disability-discrimination suit under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("RA"). Dkt. 89. McGee alleges the County failed to provide her effective communication while administering services at the Travis County jail. Dkt. 120, at 8.

1

McGee is deaf and relies on bilateral hearing aids and lip-reading to communicate. Dkt. 120-3, at 2, 3. She is not fluent in American Sign Language ("ASL"). Dkt. 120-2, at 11-12. Following her arrest for criminal trespass at the Austin-Bergstrom International Airport, police transported McGee to the Travis County jail. Dkts. 120-4, at 94-95; 120-12, at 11-12. County records demonstrate County officials were aware McGee was deaf on or around her arrival. *See, e.g.*, 120-21, at 102; 122-2 (jail records showing McGee is "hard of hearing" with bilateral hearing aids). McGee was wearing hearing aids when she arrived at the jail. Dkts. 120-4, at 100; 120-17. Jail staff confiscated McGee's phone, which McGee states she used to control her hearing aids. Dkts. 120-4, at 27; 120-21, at 88; 120-13, at 84-85 (noting inmates are not given access to their cell phones if they need to control their hearing aids).

During her arrival and initial search, McGee states she informed jail staff that she couldn't hear their instructions, though some County staff testified they did not know McGee was deaf at the time they interacted with her. Dkts. 120-4, at 95, 101-02, 130; 120-14, at 48. McGee also alleges that staff conducting the initial search were wearing masks and declined to repeat their instructions in a way McGee could understand. Dkt. 120-4 at 134 (describing two staff members who tried to tell McGee what had been said but had masks on). However, one staff member testified that she did not think the officers were wearing masks during the search. Dkt. 120-13, at 90.

Later, when jail staff permitted McGee to call her husband using a regular phone, she could not hear him. Dkt. 120-4, at 113. She informed jail staff of that fact, and they responded by taking her to a small room where she could call her husband

using an interpreter via video phone. *Id.* The interpreter used ASL and spoke aloud what McGee's husband was saying over the phone. *Id.* While the interpreter's signing was not "all that useful" for McGee, she could understand what her husband was saying because she could read the interpreter's lips. *Id.*

McGee testified that at other times during her confinement she asked jail staff for accommodations including lowering their masks so McGee could see their lips, speaking up, using gestures, and writing information down. *Id.* at 124.[1] For example, the day after her intake, when a nurse came to change McGee's bandages, McGee struggled to understand the nurse because she was wearing a mask when she spoke. *Id.* at 121-22. McGee told the nurse she couldn't hear her and asked the nurse to lower her mask. *Id.* at 122. The nurse refused. *Id.* In addition to the nurse, McGee alleges other staff declined to lower their masks when speaking with McGee. *Id.* at 124-25 (explaining staff did "not always" comply with McGee's requests for accommodations), 129-30 (stating "the officers that came to get [McGee] were wearing their masks, and [she] couldn't hear them"). In particular, when one officer came to take McGee to the doctor, McGee informed him she could not hear his instruction and asked him to lower his mask. Dkt. 120-4, at 135-36. He refused both requests. *Id.* at 136.

McGee testified that on one occasion, an officer refused to lower his mask while communicating with her about attending magistration. *See* Dkt. 120, at 10. The

---

[1] Though in its evidentiary objections the County argues McGee "never testified that she requested that people provide unobstructed views of their mouth[s]," she mentions doing so in her deposition. *See* Dkt. 126, at 4.

officer came to McGee's cell door and said something McGee could not understand about a judge. Dkt. 120-4, at 131. As McGee started to say, "what?" the officer closed the cell door and walked away. *Id.* at 131. McGee attended magistration 13 hours later. Dkts. 120-15; 120-16.[2]

Generally, McGee was able to understand jail staff when they removed their masks. Dkt. 120-4, at 123, 131. But at times, McGee could not understand staff even when they removed their masks. *Id.* at 131. In those circumstances, McGee asked staff to repeat themselves. *Id.* McGee stated that the staff declined to do so "a few times." *Id.* Finally, McGee stated that she asked staff to communicate with gestures every time they asked her to follow them somewhere in the jail. *Id.* at 139-40. McGee states that staff did not use gestures without being asked and sometimes refused to use gestures when asked to do so. *Id.* at 140.

McGee's testimony indicates that at other times, she was able to understand County staff's communications. For example, McGee testified that she heard an officer tell her to sign a form at intake, though it is unclear whether that officer was wearing a mask at the time. Dkt. 120-4, at 110. McGee also testified that she heard pieces of a conversation with a guard when he came to her door: while she could not

---

[2] McGee alleges that during magistration she "could not hear or understand anything said by the Judge via the video conference set up," since the volume was not loud enough for McGee to hear and the judge's face was too small on the screen for McGee to lip-read. Dkt. 120, at 5. But McGee cites no evidence in support of these allegations except booking sheets showing the time her probable-cause affidavit was entered into the system and the time she went to magistration. *See id.*; Dkt. 125, at 4; *see also Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." (internal quotation marks omitted)).

make out what the officer said at first, she later heard him say, "Well, you heard me." Dkt. 120-4, at 136. On the day the County discharged McGee, she "figured [] out" that an officer told her to "[g]et dressed" and "[h]urry up" after the officer threw McGee's clothes into her room. *Id.* at 141-42; *see also id.* at 143-45 (demonstrating McGee understood officers to be telling her to "hurry it up," though she testified she could "[n]ot really" understand or hear them). Finally, after she was discharged, McGee heard an officer ask if she needed help while McGee was looking down at the ground, not at the officer's face. *Id.* at 147.

## II.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary

judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.    EVIDENTIARY OBJECTIONS

The County raises the following objections to McGee's summary-judgment evidence: (1) McGee "never testified she requested that people provide unobstructed views of their mouth[s]"; (2) she "cites only to an unauthenticated and inadmissible expert report as evidence that Plaintiff requested use of her phone in the jail cell"; (3) any facts "supported solely by citation to the unauthenticated and inadmissible

6

expert report" and McGee's audiologic reports should be stricken; (4) McGee misrepresents the County employees' testimony as to whether she informed them she was deaf or that any employee saw McGee's hearing aids; and (5) McGee could see officers' faces and was noncompliant during intake. Dkt. 126, at 4-5.

With respect to the County's second and third objections, because the undersigned does not rely on McGee's expert report or audiological reports, the undersigned will deny the County's request to strike any facts "supported solely" by that evidence as moot. As for the County's first, fourth, and fifth objections, the County does not move to strike this evidence or argue that the evidence is inadmissible or incapable of being presented in a form that would be admissible at trial. *See id.*; *Maurer v. Indep. Town,* 870 F.3d 380, 384 (5th Cir. 2017). Instead, the County merely points out gaps (i.e., "misleading citations" or "misrepresentations") it identifies in McGee's statement of facts. *See* Dkt. 126, at 4-5. These objections go to the merits of McGee's motion for summary judgment and are not a proper basis for a motion to strike. *Robles v. Eminent Med. Ctr., LLC,* 619 F. Supp. 3d 609, 623 (N.D. Tex. 2022). The undersigned disregards McGee's statements to the extent they misrepresent the record or present facts in a misleading manner. To the extent the County moves to strike these statements, the request is denied as moot. *See* Dkt. 126, at 4-5.

## IV.    DISCUSSION

Title II of the ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the

benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C § 12132. The statute requires a Title II claimant to prove "'(1) that [s]he is a qualified individual within the meaning of the ADA; (2) that [s]he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of [her] disability.'" *Windham v. Harris Cnty.*, 875 F.3d 229, 235 (5th Cir. 2017) (quoting *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004)).[3]

A plaintiff may satisfy the third prong of this test using a "failure-to-accommodate" theory. *Id.* (noting the theory is codified under Title I of the ADA but that "a public entity's failure reasonably to accommodate the known limitations of persons with disabilities can also constitute disability discrimination under Title II"). A "critical component" of a Title II failure-to-accommodate claim "is proof that 'the disability and its consequential limitations were known by the [entity providing public services].'" *Id.* at 236 (quoting *Jin Choi v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 633 F. App'x 214, 215 (5th Cir. 2015)). "[B]ecause the ADA does not require clairvoyance, the burden falls on the plaintiff to specifically identify the disability and resulting limitations, and to request an accommodation in direct and specific terms." *Id.* at 236-37 (internal quotation marks and citations omitted). "When a plaintiff fails

---

[3] Because the "'jurisprudence interpreting either section is applicable to both,'" the undersigned's analysis of McGee's ADA claim applies to her RA claim, as well. *Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 574 (5th Cir. 2002) (quoting *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000)).

to request an accommodation in this manner, he can prevail only by showing that 'the disability, resulting limitation, and necessary reasonable accommodation' were 'open, obvious, and apparent' to the entity's relevant agents." *Id.* at 237 (quoting *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996)).

It is undisputed that McGee is a qualified individual with a disability under the ADA. *See* Dkts. 121, at 9; 120-17, at 4; *see Windham*, 875 F.3d at 235. The parties each move for summary judgment as to the remaining elements: whether the County denied McGee benefits, services, programs, or activities, and whether that denial was by reason of McGee's disability. Dkts. 120; 121. Because there is a genuine dispute of material fact as to whether the County denied McGee benefits or services, the undersigned will recommend that the District Judge deny both motions.

There is a genuine issue of material fact as to whether the County denied McGee benefits, services, programs, or activities. *See Windham*, 875 F.3d at 235. McGee argues the County denied her the "benefit" of "effective communication during Travis County's services, programs, or activities in the Travis County jail, specifically, medical treatment, court proceedings, and jail intake." Dkt. 120, at 8 (citing 28 C.F.R. § 35.160(a)(1)). The parties agree that confinement in jail is a program or service under the ADA or RA. *Id.* at 7-8; Dkt. 121, at 9-10; *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). The County also does not dispute that medical treatment, court proceedings, and jail intake are programs or services under the ADA or RA. *See* Dkt. 121, at 9-10; *see also Salinas v. City of New Braunfels*, 557 F. Supp. 2d 777, 781 (W.D. Tex. 2008) ("Courts have broadly construed the 'services,

9

programs, or activities' language in the ADA and [RA] to encompass anything a public entity does." (internal quotation marks omitted)). But the parties disagree as to whether the County denied McGee any benefit while she was confined. Dkts. 120, at 8; 121, at 10.

Initially, failing to provide effective communication can constitute a denial of benefits, services, programs, or activities under the ADA. ADA Title II regulations require public entities to "take appropriate steps to ensure that communications with … members of the public … with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1). They also require public entities "to furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities … an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." *Id.* § 35.160(b)(1). And they direct that "[i]n determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats[.]" *Id.* § 35.160(b)(2).

The Fifth Circuit has countenanced failure-to-accommodate claims based on ineffective communication. For example, in *Luke v. Texas*, the court held that denying a deaf defendant an interpreter during his criminal proceedings could support a claim under Title II of the ADA. 46 F.4th 301, 306 (5th Cir. 2022) ("Not being able to understand a court hearing or meeting with a probation officer is, by definition, a lack of meaningful access to those public services."). Emphasizing that "[l]ack of

10

meaningful access is *itself* the harm under Title II, regardless of whether any additional injury follows," the court concluded that the plaintiff's Title II injury was "not being able to understand the judges and probation officers as a nondeaf defendant would." *Id.* The court also rejected the defendant's argument that there was no ADA violation because the plaintiff's mother—who knew only basic sign language—filled in as an impromptu interpreter. *Id.* at 307. The court stated the plaintiff's mother's involvement "did not fully inform him of the proceedings or otherwise provide the meaningful access the ADA requires." *Id.* While a defendant is "not required to acquiesce to [the plaintiff's] choice of accommodations merely because [the plaintiff] requested them," "it is required to provide [the plaintiff] with reasonable accommodations that give 'meaningful access to the benefit that the grantee offers.'" *Cadena v. El Paso Cnty.*, 946 F.3d 717, 725 (5th Cir. 2020) (quoting *Alexander v. Choate*, 469 U.S. 287, 301 (1985)).

Here, McGee makes an initial showing that the County denied her the benefit of effective communication. *See Matsushita*, 475 U.S. at 586. For example, after McGee informed the nurse she could not hear her, the nurse refused to lower her mask to allow McGee to read her lips. Dkts. 120, at 8-9; 120-4, at 121-22. Additionally, because McGee could not hear the officers conducting her initial search or read their lips, McGee "was not informed of the search and did not understand what officers were doing during the search or why they were doing it." Dkts. 120, at 9; 120-4, at 97, 100, 102.

11

As McGee appears to concede,[4] though, the County comes forward with competent summary judgment evidence of the existence of a genuine fact issue as to effective communication. *Matsushita*, 475 U.S. at 586. Specifically, the County presents some evidence McGee understood the County's officers during her interactions with them. McGee testified that she heard officers tell her to sign a form, Dkt. 121-1, at 16; heard pieces of a conversation with a guard when he came to her cell door, *id.* at 19; heard an officer tell her to "[g]et dressed" and "[h]urry up," *id.* at 20-21; understood officers to be telling her to "hurry it up," though she testified she could "[n]ot really" understand them, *id.* at 21; and heard an officer ask if she needed help while McGee was looking down at the ground, not at the officer's face, *id.* at 22. This testimony raises a genuine issue of material fact as to whether the County's communications with McGee were effective. *See Salinas*, 557 F. Supp. 2d at 783 (stating that as it applies to questions of effective communication, "[d]ue to the broad, encompassing language found in the ADA, the term 'effective' lends itself to a fact-intensive inquiry, making determination difficult on summary judgment"). Accordingly, McGee's motion for summary judgment, Dkt. 120, should be denied.

But summary judgment in the County's favor is not proper, either. As explained above, there is a genuine issue of material fact as to whether the County provided McGee effective communication.

---

[4] In her response to the County's motion for summary judgment, McGee states whether McGee could hear the officers around her is a "disputed fact" that "should not be considered in deciding" a motion for summary judgment. Dkt. 125, at 12.

The County asserts the following in support of its motion for summary judgment: first, that it accommodated McGee "by way of video phone" and provided other accommodations "as needed." Dkts. 121, at 10; 121-2, at 16 (citing McGee's testimony that she called her husband via videophone and could read the interpreter's lips); *see also* Dkt. 126, at 7. Second, that McGee "still received medical care and mental health care, was able to sign for her property before she was housed, and received her property when she was released." Dkt. 121, at 10; *see* Dkt. 122-2; *see also* Dkt. 126, at 7 (the County's response to McGee's motion for summary judgment).

The County is not entitled to summary judgment on the basis that *ineffective* means of communication were available to McGee. Fortuitously, the County's use of an ASL interpreter helped McGee understand what her husband was saying on their video phone call because McGee could read the interpreter's lips. Dkt. 121-1, at 16. But McGee points to evidence raising genuine issues of material fact as to whether communication was effective. For example, it is undisputed that the nurse refused to lower her mask. Dkt. 120-4, at 122. In this circumstance, there is no evidence the County made any other accommodation "as needed." *See* Dkt. 121, at 10. The nurse did not, for example, use a whiteboard to communicate with McGee in writing. *See Salinas*, 557 F. Supp. 2d at 783 (concluding there was a genuine issue of material fact as to effective communication when, among other facts, the detective used written communication to obtain information from the deaf plaintiff). Indeed, the record suggests that during intake and initial search, the County may have known its communication was ineffective but declined to change its approach. *See* Dkt. 120-14,

at 51 (explaining that McGee did not give "any signal" that she understood the questions being asked at intake, but that she looked over at the individual who was asking the questions), 53 (stating McGee did not give any indication that she understood); *see also id.* at 79 (noting that when the officers tried to communicate with McGee during intake, she "just kept going on about this airport"), 102 (noting McGee didn't know why she was at the jail); *but see id.* at 41 (stating that McGee "was understanding that we were going to have to change her out").

The County also asks the Court to award summary judgment in its favor on the basis that "signage was posted alerting [McGee] to the availability of interpreters" and "Plaintiff was permitted to keep her hearing aids." Dkt. 126, at 7. But unrebutted evidence shows McGee is not fluent in ASL and the County confiscated McGee's phone, which she uses to control her hearing aids. Dkts. 120-2, at 11-12; 120-4, at 27; 120-13, at 84-85; 120-21, at 88. Thus, there remains a genuine issue of material fact as to whether the County's communications were effective in light of McGee's limitations.

The County is also not entitled to summary judgment on the basis that McGee received some services while she was in jail. *See* Dkt. 121, at 10 (stating McGee "still received medical care and mental health care, was able to sign for her property before she was housed, and received her property when she was released"). In the context of medical care, the Fifth Circuit has noted "'it is error to conclude on summary judgment that the mere successful communication of the primary symptoms, treatment plan, and discharge instructions is enough, as a matter of law, to preclude

14

liability under the ADA and RA.'" *Francois v. Our Lady of the Lake*, 8 F.4th 370, 380 n.8 (5th Cir. 2021) (quoting *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 835 (11th Cir. 2017)). For example, unlike McGee, a non-disabled person seeking medical care would have the benefit of not only treatment, but also an "expansive informational exchange" including, as applicable, "a whole host of other topics, such as any prior medical conditions[.]" *Silva*, 856 F.3d at 835; *see also Luke*, 46 F.4th at 306 ("Lack of meaningful access is *itself* the harm under Title II, regardless of whether any additional injury follows"). So even though the nurse successfully changed McGee's bandages, the County is not entitled to summary judgment that it provided adequate benefits and services. *See Salinas*, 557 F. Supp. 2d at 783 (denying summary judgment in favor of defendant municipality even where, among other facts, the detective testified she was able to obtain information from the plaintiff, who was deaf, using written communication).

Finally, the County cites no law standing for the proposition that because McGee understood some exchanges with County staff, communication was effective as required by the ADA. Regardless of whether McGee successfully signed for her property at intake and received it upon release, *see* Dkt. 121, at 10, there remains a genuine issue of material fact as to whether the County provided McGee with accommodations that gave her "meaningful access" to the County's services during her confinement. *See Cadena*, 946 F.3d at 725; *Salinas*, 557 F. Supp. 2d at 783, 785 (denying summary judgment as to effective communication where the plaintiff

successfully communicated with detectives but where the plaintiff testified communication was ineffective before she received an interpreter).

Since there is a genuine dispute of material fact as to whether the County's communications were effective—and therefore whether the County denied McGee a benefit or service to which she was entitled—the District Judge should deny both parties' motions for summary judgment. Because the undersigned recommends denying the motions on this basis, the undersigned does not reach the issue of whether there is a genuine issue of material fact as to whether the County's discrimination was by reason of McGee's disability.

## V.      RECOMMENDATIONS

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Judge **DENY** McGee's motion for summary judgment, Dkt. 120, and **DENY** the County's motion for summary judgment, Dkt. 121.

The referral of this case to the Magistrate Judge should now be canceled.

## VI.     WARNINGS

The parties may file objections to this report and recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Judge need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after the

16

party is served with a copy of the report shall bar that party from *de novo* review by the District Judge of the proposed findings and recommendations in the report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED May 12, 2026.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE